IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NAUTILUS INS. CO., :

      Plaintiff : Civil Action 2:09-cv-1062

  v. :

VILLAGE OF BELLAIRE, *et al.*, : Magistrate Judge Abel

      Defendants. :

**ORDER**

This matter is before the Court pursuant to Defendant Nemo's Auto Body, Inc.'s ("Nemo") Motion to Dismiss or Abstain (Doc. 8). Nemo moves the Court either to dismiss this action for lack of subject matter jurisdiction, claiming that the amount in controversy does not exceed $75,000, or to decline to entertain this declaratory judgment action pursuant to 28 U.S.C. §2201(a).

**Factual background**.

Nautilus Insurance Company ("Nautilus") has brought an action for a declaratory judgment that it has no obligation to provide indemnity for any claims filed by the Plaintiffs in, or to defend any of the Defendants in, *Village of Bellaire, et al. v. J.P. TAM, Inc., et al.*, Case No. 09-W149 in the Court of Common Pleas of Belmont County, Ohio (the "state court case"). In December 2007, Nautilus issued a commercial lines

1

insurance policy to Nicodemus A. Masciarelli ("Masciarelli"), one of the defendants in the state court case. The factual basis underlying that case was previously summarized in the Court's preliminary pretrial order (Doc. 22 at 2):

> The complaint makes the following allegations. On December 1, 2007 a four story commercial building at 3315 Belmont Street, Bellaire, Ohio was totally consumed by fire. In or after January 2008, Phyllis A. Barsi, Teresa J. Moore, Antoinette M. Meek and Mary Shepherd, individually or as agents of J.P. TAM, Inc. contracted with Nicodemus A. Masciarelli and/or C&D Recycling Company to remove the building at 3315 Belmont Street because it was structurally unsound and in danger of collapse. Masciarelli and C&D Recycling did not have a crane. They either subcontracted for Nemo's Auto Body, Inc. to do the demolition with a crane or leased Nemo's crane and crane operator. During the demolition, the crane caused damage to an adjacent building owned by Michael W. Doyle and Mary Doyle.

The complaint here alleges that the Masciarelli insurance policy contained terms excluding from coverage damage arising out of "work performed by any contractor or subcontractor whether hired by or on behalf of any insured, or any acts or omissions in connection with the general supervision of such work." (Doc. 2 at 6.) It also alleges that the policy excluded damage caused by demolition. (*Id*.) Defendant Nemo is also one of the state court defendants.

**Subject matter jurisdiction**.

Nemo argues that, although Nautilus invokes diversity jurisdiction under 28 U.S.C. §1332, such jurisdiction extends only where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between parties of different states." It notes that, in the underlying state court action, the plaintiffs seek

2

merely damages "in excess of $25,000." *See* Doc. 8-1 at 8-9.  Nemo asserted in the brief support its motion to dismiss that the amount in controversy here does not exceed $75,000, and that Nautilus has not satisfied its burden of demonstrating that the amount in controversy requirement is satisfied.

Nautilus responded that the state court complaint, in its recitation that damages exceed $25,000, is merely conforming to the practice of O.R.C.P. 8(A).  It notes that the state court complaint seeks amounts in excess of $25,000 on each of Plaintiffs' Third and Fourth Claims, and $26,688.00 plus interest on their Fifth Claim.  (*Id*. at 9-10.)  Thus, Nautilus argues, the potential damages in the tort case certainly exceed $75,000.  Nemo's reply brief appears to abandon the argument that the Court lacks subject matter jurisdiction.  The brief does not mention subject matter jurisdiction but, instead, focuses solely on its abstention argument.  Nonetheless, the Court notes that Plaintiffs' Third and Fourth Claims both seek damages for injuries to their property, so it is unlikely that should the trier of fact find liability on both claims that more damages would be awarded than if liability were found on only one claim.

Subject matter jurisdiction cannot be stipulated and the absence of subject matter jurisdiction can be raised at any time, even *sua sponte* by the Court of Appeals. *Mansfield, C. & L M. Ry. v. Swan*, 111 U.S. 379, 4 S. Ct. 510, 28 L. Ed. 462 (1884);  *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 29 S. Ct. 42, 53 L. Ed. 126 (1908);  *Sumner v. Mata*, 449 U.S. 539, 548, n.2, 101 S. Ct. 764, 770, n.2, 66 L. Ed. 2d 722 (1981); *Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 890 (6th Cir. 1998); Wright & Miller, *Fed. Practice.*

3

*& P.: Civil 2d* §1393. Here the deadline for completing discovery in the Belmont County Common Pleas Court lawsuit has passed, and the case is set for trial in May 2010. (Doc. 8-2.) Consequently, damages discovery should now have been completed. The parties should know with reasonable certainty the range of damages that might be awarded against Nemo should the trier of fact find liability.

Nonetheless, the parties have provided the Court with no information about the amount in controversy at the time of removal other than the complaint in the Common Pleas Court lawsuit. Since Nemo appears to have conceded Nautilius' assertion based on that complaint that more than $75,000 is in controversy, the motion to dismiss is DENIED as to the argument that the Court lacks subject matter jurisdiction.

**<u>Abstention from hearing declaratory judgment action</u>**.

Nemo argues also that the Court has, under the federal declaratory judgment statute at 28 U.S.C. §2201, discretion to decline to entertain declaratory judgment actions. That statute states, in pertinent part, that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." It notes that the exercise of the Court's jurisdiction under 28 U.S.C. §2201 is not mandatory. Stating that, in other insurance declaratory judgment actions, federal courts have declined to exercise jurisdiction where the underlying cases are being litigated in state court, the legal issues to be resolved are issues of state insurance law, and the two cases have common issues of fact, Nemo asserts:

4

> In this matter, the State Court Case has been pending since March of 2009, and involves eleven (11) different Ohio parties (all of which are named as Defendants in the instant federal case). The Ohio case is set for trial on May 18, 2010, and is subject to a discovery and dispositive motion deadline on March 1, 2010. The issues invoked by the instant case involve issues of state insurance law. The questions in controversy between the parties to the federal suit "can better be settled in the proceeding pending in the state court," if only the Plaintiff herein were to intervene or otherwise file in State Court. *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942).

(Doc. 8 at 6.) Nautilus argues in response that Nemo has presented no evidence demonstrating that adjudicating this matter would interfere with the state court action, or that the state court is in a better position to resolve the question of coverage under the insurance policy at issue.

The language of 28 U.S.C. §2201(a) "affords the district court 'discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites.'" *Travelers Indem. Co. v. Bowling Green Professional Assocs., PLC*, 495 F.3d 266, 271 (6th Cir. 2007), quoting *Adrian Energy Assocs. v. Michigan Pub. Serv. Comm'n*, 481 F.3d 414, 421 (6th Cir. 2007). The Sixth Circuit Court of Appeals, in *Grand Trunk W. R.R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984), established five factors for a district court to evaluate in deciding whether to hear a declaratory judgment action: (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to

5

provide an arena for a race for *res judicata*"; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective. The appellate court later, in *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000), recognized three subfactors defining encroachment: (4a) whether the underlying factual issues are important to an informed resolution of the case; (4b) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (4c) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common law or statutory law dictates a resolution of the declaratory judgment action.

  a. **Settlement of the controversy.**

  The Sixth Circuit Court of Appeals, in *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546 (6th Cir. 2008), identified two divergent lines of caselaw on the subject of whether an insurance declaratory judgment action will settle the controversy at issue. The *Flowers* court concluded that the question "appears to rest on the competing policy considerations of consolidating litigation into one court versus permitting a party to determine its legal obligations as quickly as possible." *Id*. at 555. Where the insurance company seeking a declaration of no duty to defend or indemnify is not a party in the underlying state court action, the question of its duty cannot be decided there. *Id*. at 556. Nemo argues that Nautilus could simply intervene in the state court action, though Nautilus suggests that this could cause a stay of the action while coverage issues

6

were decided.

The *Flowers* court, however, found that another important consideration was the extent to which the issue involved a factual, rather than legal, dispute. As noted above, Plaintiff here claims in its complaint that the insurance policy it issued to the demolition company excluded damage caused by subcontractors and damage resulting from demolition. Nemo's answer (Doc. 7) in this case generally maintains that the insurance policy speaks for itself, and denies that Nemo caused any damage alleged in the state court action; the answer of J.P. TAM, Inc. is similar (Doc. 17). Intervenor defendant Western Reserve Mutual Casualty Company ("Western Reserve"), the excess insurance carrier for J.P. TAM, Inc., has filed an answer expressly denying that the policy exclusions apply to the facts here, and has counterclaimed for its own declaratory judgment that the policy does apply (Doc. 24).

Nemo has not presented any reason why this dispute is fundamentally one of fact, rather than one of contractual interpretation, or why the progress of discovery and trial in the state court might result in inconsistent findings of fact. The operative question, according to the parties' pleadings, is how the Nautilus policy should be interpreted and what it covers. A declaratory judgment in this court would settle that question. Thus, the first factor points towards the exercise of jurisdiction.

**b.     Clarification of the legal relations at issue.**

In this action, Western Reserve states that it is providing a defense to J.P. TAM, Inc. in the state court action, and is seeking reimbursement from Nautilus for all of its

expenses incurred thereby. (Doc. 24 at 3-4.) It seeks a declaration that its own coverage is excess to that of Nautilus for the losses described, and that it is entitled to reimbursement for its costs of defense. Accession to or denial of the prayers of either Nautilus or Western Reserve would have the effect of clarifying the legal relations at issue here. Nemo does not argue that this action would be futile in some way or would not properly determine the parties' contractual obligations. Thus, the second factor points towards the exercise of jurisdiction.

    c.    **Race for *res judicata*.**

As the *Flowers* court noted, "[t]he third factor is meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum.'" *Flowers*, 513 F.3d at 558, quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004). Nemo has not alleged that Nautilus has brought this action in an attempt to interfere with the outcome of the state action or engage in "procedural fencing". It states that the state court case has been pending since March 2009, and that it is set for trial on May 18, 2010. Nautilus filed this action on November 20, 2009, which does not seem to indicate that its motive was attempting to get the federal court to settle some matter before the state court. Accordingly, the third factor points towards the exercise of jurisdiction.

    d.    **Increased friction between federal and state courts.**

Nautilus argues:

8

> This Circuit holds that courts are particularly reluctant to entertain federal declaratory judgment actions premised on diversity jurisdiction in the face of a previously-filed state court action where the action of the plaintiffs in the declaratory judgment action has been to rest the case away from state courts. [*Adrian Energy Assoc.*, 482 F.3d] at 421. Here, Nemo has presented no evidence that the instant Complaint is an attempt by Nautilus to wrest the action from the state court. In fact, Nautilus is not a party to the underlying tort Complaint.

(Doc. 16 at 4.) A federal district court would be reluctant to exercise jurisdiction over an insurance coverage declaratory judgment action where doing so would have the practical effect of simply removing the case and rendering the state court proceeding redundant. As noted above, there is no basis here to suppose that there exist issues of fact key to resolving this controversy, and that these are best left to the state court.[1] While Nemo cites the warning of the United States Supreme Court in *Billhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942) that district courts should avoid "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation", this case does not appear one where the adjudication of Nautilus' obligations under the Masciarelli policy would interfere with the operations or dispositions of the state court. Western Reserve has pled that it is presently providing a defense in that action; the practical effect of this case would appear to be to determine who is obligated to pay for that defense, not to determine who was liable for the damage to the Doyles' building.

---

[1] The *Flowers* court drew a contrast between, *e.g.*, *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003), wherein the question of coverage was incidental to the facts being considered in the state court action, and *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807 (6th Cir. 2004), wherein the question of coverage turned upon an adjudication of whether the state court plaintiff was actually an employee of the defendant. *Flowers*, 513 F.3d at 555-556.

Likewise, there appears to be no practical or public policy reason why this court cannot or should not interpret the Masciarelli insurance policy.  Accordingly, the fourth factor points towards the exercise of jurisdiction.

    e.    **Availability of alternate remedies.**

The final factor at issue is the availability of alternative remedies.  As noted above, Nemo argues that Nautilus could simply move to intervene in the state court action.  Nautilus argues that taking such action might hamper or delay the ultimate resolution of the matter: "[a] result that would delay final resolution of the tort case and potentially increase the litigation costs to the tort parties."  (Doc. 16 at 5.)  It is true that Nautilus could intervene in the state court action, and pray for the same declaratory relief sought in this action.  The most plausible outcome from that course of action, however, is the opposite of that stated by Nautilus:  the trial court would delay determination on Nautilus' claims until after the resolution of the underlying tort dispute.  In the mean time, Western Reserve would presumably continue to defend the state court defendants, and would crossclaim against Nautilus for the cost of the defense.  This scenario presents little improvement upon, though perhaps greater potential for delay than, simply continuing the proceeding at bar.  This factor does not either support, or counsel against, the exercise of jurisdiction;  it seems instead to indicate merely that alternate and equivalent remedies exist.

    **Conclusion**.

Nemo has persuasively argued that this court *can* abstain, but not why it *should*.

10

An analysis of the *Grand Trunk* factors militates in favor of the exercise of jurisdiction, as entertaining this declaratory judgment action would not appear to interfere with the proceedings in state court or depend greatly upon potentially disputed issues of fact. Accordingly, the motion of Defendant Nemo's Auto Body, Inc. to dismiss or abstain (Doc. 8) is **DENIED**.

s/Mark R. Abel  
United States Magistrate Judge